IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:18-CR-45-BO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| EDWARD JAY WASS, | ) | |
| Defendant. | ) | |
| | ) | |

This cause comes before the court on defendant Edward Jay Wass' motion to dismiss his indictment [DE 20]. The government has responded in opposition, [DE 21], and the matter is ripe for ruling. For the following reasons, defendant's motion is GRANTED.

## BACKGROUND

On September 7, 1995, defendant was convicted of one count of Sexual Battery, Custodial Authority, 12 to 18 Years of Age and one count of Lewd and Lascivious, Child Under 16, in Escambia County, Florida. He was sentenced to one year of custody, one year of community control, and seven years of probation, concurrent on each count. On September 18, 1998, his probation was revoked and he was sentenced to one year of custody and fifteen years of probation. He completed his probation on September 18, 2014. On March 6, 2018, a grand jury returned an indictment against defendant, alleging that at least by September 2016, and until February 27, 2018, he had traveled in interstate commerce without registering under the Sex Offender Registration and Notification Act, in violation of 18 U.S.C. § 2250(a). He has now moved to dismiss his indictment on constitutional grounds.

## DISCUSSION

In 2006, Congress passed the Adam Walsh Child Protection and Safety Act, the provisions of which were intended to reduce sex offenses and crimes against children. Pub. L. 109-248, Tit. I, 120 Stat. 590. It included the Sex Offender Registration and Notification Act, abbreviated as SORNA. SORNA revised the existing sex offender registration system. Sex offenders—those convicted of any criminal sex offense, whether state, federal, tribal, local or military—must register in every jurisdiction where they live, study, or work. 34 U.S.C. § 20911; 34 U.S.C. § 20913. The Act established three tiers of seriousness, and tied the length of time an offender must stay on the registry to the seriousness of the offense. 34 U.S.C. § 20915. It created the National Sex Offender Registry, which is managed by the FBI and compiles all of the individual jurisdictional registries, and established rules for the states, including that they themselves criminalize failures to properly register. 34 U.S.C. § 20921; 34 U.S.C. § 20913. While all states and the District of Columbia have sex offender registries, the majority of states are not in full compliance with SORNA. SORNA was originally codified at 42 U.S.C. § 16901 *et seq.*, and has since been recodified without any other change at 34 U.S.C. § 20901 *et seq.*

The Act did not take a position on what to do with individuals who had been convicted of a registrable sex offense prior to the law's passage. Instead, Congress made that responsibility the Attorney General's. 34 U.S.C. § 20913(d). Until the Attorney General so articulated, pre-Act offenders were not required to register. *Reynolds v. United States*, 565 U.S. 432, 445 (2012). A series of interim, proposed, final and supplemental guidelines were promulgated over the next five years. 28 C.F.R. 72.3; 73 Fed. Reg. 38030; 28 C.F.R § 72.3; 76 Fed. Reg. 1630, 1639. Today, individuals convicted of a pre-Act sex offense must register, though they are credited with the time lived in the community. 75 Fed. Reg. 81849, 81851.

The provision of the Act under which defendant has been prosecuted, 18 U.S.C. § 2250(a), makes it a federal felony for sex offenders to travel in interstate commerce if they are required to register and have not done so. In 2010, prior to the promulgation of the Final Rule by the Attorney General, the Supreme Court ruled that § 2250(a) only applied to sex offenders who traveled in interstate commerce after the 2006 passage of the law, as the text of the statute uses the term "travels," not "had traveled" or "traveled." *Carr v. United States*, 560 U.S. 438, 448-49 (2010). The Court explicitly declined to reach other potential constitutional questions. *See id.* at 444 n. 2.

So, defendants, like this defendant, whose sex offense predates the law, but whose travel postdates it, are required to register and can be federally prosecuted for failing to do so. This is constitutionally defective in two ways. The first is that giving the Attorney General the authority to determine whether pre-Act offenders have to register violates the nondelegation doctrine and the separation of powers principle. The second is applying the sex offender registration scheme to pre-Act offenders violates the Ex Post Facto Clause of the Constitution. The Court will address each issue in turn.

I. The Nondelegation Doctrine

Congress does not have the ability to delegate its legislative powers. U.S. Const. Art I, § 1. ("All legislative Powers herein granted shall be vested in a Congress of the United States."); *see also Field v. Clark*, 143 U.S. 649, 694 (1892). That restriction, however, "does not prevent Congress from obtaining the assistance of its coordinate Branches." *Mistretta v. United States*, 488 U.S. 361, 372 (1989). As long as Congress gives enough instruction, it may permissibly delegate power. *J.W. Hampton, Jr. & Co. v. United States*, 27 U.S. 394, 306 (1928). That is, the law Congress passes must include an "intelligible principle" to guide the person or body to

3

whom the law delegates the power. *Id.* at 409. If Congress "clearly delineates the general policy, the public agency which is to apply it, and the boundaries of this delegated authority," then it has not violated its separation-of-powers mandate and the delegation is appropriate. *American Power & Light Co. v. SEC*, 329 U.S. 90, 105 (1946). When a statute provided no guidance for the exercise of discretion, it was a violation of the nondelegation doctrine. *Panama Refining Co. v. Ryan*, 293 U.S. 388, 417 (1935). So too was a statute that simply instructed the agency to assure "fair competition." *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495, 536-39 (1935).

Traditionally executive functions, such as foreign policy and the military, are ready candidates for broad delegation by Congress. *See Loving v. United States*, 517 U.S. 748, 772-73 (1996). By contrast, certain areas require more congressional guidance. *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 475 (2001). Regulating liberty, as one of the most important congressional undertakings, thus merits deeper congressional involvement. *See Kent v. Dulles*, 357 U.S. 116, 129 (1958). So does the establishment of criminal penalties for private conduct. *United States v. Evans*, 333 U.S. 483, 486 (1948); *Sessions v. Dimaya*, 138 S.Ct 1204, 1212 (2018). Retroactivity is disfavored, and so laws that are retroactive must clearly say so. *Bowen v. Georgetown Univ. Hosp*, 488 U.S. 204, 208 (1988). Congress may delegate the power to establish retroactivity, but it must be in "very plain words." *Id*; *Brimstone R. Co. v. United States*, 276 U.S. 104, 122 (1928). Finally, laws that touch on state sovereignty should contain clear guidance. *Gregory v. Ashcroft*, 501 U.S. 452, 464 (1991).

The Supreme Court previously held that 34 U.S.C. § 20913(d) delegated to the Attorney General the blanket authority to establish registration requirements for pre-Act offenders. *Reynolds v. United States*, 565 U.S. 432 (2012). The question they did not address was whether

4

that authority is a violation of the nondelegation doctrine, though the dissent raised it. *Id.* at 450. (Scalia, J., dissenting) ("Indeed, it is not entirely clear to me that Congress can constitutionally leave it to the Attorney General to decide—with no statutory standard whatever governing his discretion—whether a criminal statute will or will not apply to certain individuals.").

The provision here affects liberty, establishes new criminal penalties, is retroactive, and impinges on state sovereignty. It is the exact area in which Congress must speak plainly and clearly, and Congress has not done so.[1]

The Attorney General, by this statute, was granted the freedom to apply SORNA to all pre-Act offenders, to draw distinctions between various groups based on no particular congressional mandate, or to not apply SORNA at all. 565 U.S. 432 at 445. As discussed above, the Attorney General has demonstrated the breadth of that authority, promulgating various versions of the registration requirement for pre-Act offenders. This grant is untethered to a congressional mandate, apart from the Act as a whole's stated intent to "protect the public." 34 U.S.C. § 20901. This is insufficient, especially for a section that establishes new criminal liability. First, this "broad outline" is nothing more than an introduction to the entire Act. *See Panama Ref. Co. v. Ryan,* 293 U.S. 388, 418 (1935). Even if it were more than an introduction, it is still not a policy statement regarding this category of offenders. Next, determining criminality is intrinsically legislative, but every criminal provision is passed in order to protect the public. Therefore, finding this to be a sufficient intelligible principle would justify shifting all federal criminal legislating to the executive branch.

---

[1] The Fourth Circuit has never issued a published opinion on the issue, though it has considered it in nonbinding, unpublished opinions. *See United States v. Sampsell,* 541 F. App'x 258 (4th Cir. 2013); 461 F. App'x 349 (4th Cir. 2012).

But for the Attorney General's decision, and the Attorney General's alone, defendant here would not be criminally liable. Congress has not met its burden to articulate a standard. It has not passed a law that contains an intelligible principle, and so it has impermissibly delegated its authority. This provision violates the separation of powers principle and is unconstitutional.

II.    The Ex Post Facto Clause

The Ex Post Facto Clause of the Constitution "prohibits punishment of a defendant 'for an act which was not punishable at the time it was committed.'" *United States v. Gould*, 568 F.3d 459, 466 (4th Cir. 2009) (quoting *Weaver v. Graham*, 450 U.S. 24, 28 (1981)); *see also* U.S. Const. art. 1 § 10, cl 1. The clause prohibits punishment, so while it generally applies to criminal penalties, it does not exclusively do so. *Weaver v. Graham*, 450 U.S. at 31 ("[I]t is the effect, not the form, of the law that determines whether it is *ex post facto*.")

The Fourth Circuit has held that § 2250's criminal penalties for offenders who travel in interstate commerce while failing to register do not implicate the Ex Post Facto Clause because the criminal act was not becoming a sex offender, it was failing to register once required. *United States v. Gould*, 568 F.3d 459 (4th Cir. 2009). As mentioned above, Supreme Court disagreed, though not on Ex Post Facto grounds. *Carr v. United States*, 560 U.S. 438 (2010) (finding that the criminal act was the traveling in interstate commerce, and that traveling must take place after SORNA's effective date).

A larger question, separate from the specific criminal penalties of § 2250, is whether SORNA's registration requirements generally, 34 U.S.C. § 20911 *et seq.*, are punitive enough to merit consideration under the Ex Post Facto clause. This Court finds that they are.

While the Supreme Court has never discussed SORNA's Ex Post Facto implications, it did uphold the retroactivity of Alaska's registration system fifteen years ago. *Smith v. Doe*, 538

6

U.S. 84, 105-106 (2003). Other courts in this circuit have found that opinion forceful when finding that SORNA's retroactive registration requirements are also constitutional. *See, e.g., United States v. Sherman*, 784 F. Supp. 2d 618, 622-23 (W.D. Va. 2011). This Court disagrees. There are clear reasons why Alaska's system might not be so punitive as to violate the clause, but SORNA is. First, a first-time failure to register in Alaska is a Class A Misdemeanor. Alaska Stat §§ 11.56.835. Failing to register under SORNA is a felony with maximum ten years' imprisonment, as well as tie-in state criminal liability. 18 U.S.C. § 2250; 34 U.S.C. § 20913(e). Second, while Alaska's regime was placed within Alaska's already operating Department of Public Safety, which has both civil and criminal functions, SORNA created a department to administer and implement the Act. *See* Corey Rayburn Yung, *One of These Laws Is Not Like the Others: Why the Federal Sex Offender Registration and Notification Act Raises New Constitutional Questions*, 46 HARV. J. LEGIS. 369 (2009). Third, the Court held that "offenders subject to the Alaska statute are free to move where they wish and to live and work as other citizens." 538 U.S. 84 at 101. As discussed below, that is not the case under SORNA.

The question remains whether the federal sex offender registration system is punitive such that the Ex Post Facto Clause applies to it. It is, and it does. There are two questions to ask: first, whether the legislature's intent was punitive; and second, whether the system itself is punitive, no matter what the legislature intended. 538 U.S. 84 at 92; *see also Does v. Snyder*, 834 F.3d 696 (6th Cir. 2016). A series of factors fleshes out what punitive actually means: whether the system "has been regarded in our history and traditions as a punishment; imposes an affirmative disability or restraint; promotes the traditional aims of punishment; has a rational connection to a non-punitive purpose; or is excessive with respect to this purpose." *Smith v. Doe*, 538 U.S. at 97, quoting *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69 (1963).

7

Registration under SORNA carries with it a series of burdens, so much so that in *Carr*, the Supreme Court held that it was the normal consequences of registration, not the felony penalty for traveling and failing to register, that "stand at the center of Congress' effort to account for missing sex offenders." *Carr v. United States*, 560 U.S. 438, 456 (2010).

Offenders' detailed personal information is publicly available online. They must appear in person for regular check-ins—which the Alaska statute did not require—and consistently update their information. 34 U.S.C. § 20918. They must register in any jurisdiction where they live, study, or work, providing DNA, fingerprints, palm prints, and descriptions of their vehicle and internet presence. 34 U.S.C. § 20914; § 20916. The lowest tier for registration is a fifteen year term, and the longest is life, and the assignment to a tier is not reviewable. 34 U.S.C. § 20915. Offenders age 14 and up are subject to registration. 34 U.S.C. § 20911(8).

Additionally, many state and local entities have restrictions on where registered sex offenders may live or work, with the state mechanisms linked to or coextensive with the federal system. *See, e.g.*, N.C.G.S. §§ 14-208.17; § 14-208.6(4). The apparatus exists so the public may treat these individuals differently. As a result of their crimes, they are deliberately not free to "live and work as other citizens." 538 U.S. 84 at 101. If the registration system were not restrictive, it would not function.

Next, the traditional aims of punishment are promoted, including deterrence and retribution. The statute's Declaration of Purpose reads that the law was passed "in response to the vicious attacks by violent predators against the victims listed below," and goes on to list seventeen victims of terrible crimes. *See* 34 U.S.C. § 20901. Likewise, the public nature of the registry makes it a tool of public shame, which has been a consistent mechanism for punishment in human history. *Smith v. Doe*, 538 U.S. 84, 98 (2003). Scarlet letters, ducking stools, stockades

8

and other public punishments were designed to inflict "permanent stigmas, which in effect cast the person out of the community." *Id.*, quoting Toni M. Massaro, *Shame, Culture, and American Criminal Law*, 89 MICH. L. REV. 1880, 1913 (1991). In discussing shame, the Supreme Court distinguished between Alaska's online website and public whippings of the past, saying, "our system does not treat dissemination of truthful information in furtherance of a legitimate governmental objective as punishment." 538 U.S. at 99. But the purpose of the notification here is to elicit a reaction from the public who is notified, and that reaction is punitive in nature and effect. The government is "selecting some conviction information out of its corpus of penal records and broadcasting it with a warning. Selection makes a statement, one that affects common reputation and sometimes carries harsher consequences, such as exclusion from jobs or housing, harassment, and physical harm." *Id.* at 109 (2003) (Souter, J., concurring). *See also Doe v. Snyder*, 834 F.3d 696, 701 (6th Cir. 2016) (discussing Michigan's sex offender registry law and its relationship to the historical punishment of banishment).

Finally, the excessiveness and non-punitive purpose inquiry "is not an exercise in determining whether the legislature has made the best choice possible to address the problem it seeks to remedy. The question is whether the regulatory means chosen are reasonable in light of the non-punitive objective." *Smith v. Doe*, 538 U.S. at 105. As discussed above, the non-punitive objective here is public safety, but that objective cannot be separated from the punitive aspects of the registration system. That is, the objective of public safety is achieved through the punishment, not alongside it. These factors, then, indicate that SORNA's registration scheme is punitive.

The particularly serious nature of these kinds of crimes is often cited to defend legislation in this area. *See United States v. Comstock*, 560 U.S. 126, 142 (2010). But the Ex Post Facto

9

Clause does not have an exception based on seriousness. A punitive scheme does not become a non-punitive one just because those who bear the burdens deserve to be punished. SORNA's registration requirement, while civil in description, is punitive in nature. Accordingly, its application to individuals who committed registrable offenses prior to its passage is a violation of the Ex Post Facto Clause of the Constitution.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss [DE 20] is GRANTED and the indictment is DISMISSED. The defendant is ordered to be released from federal custody forthwith. The clerk is DIRECTED to close the case.

SO ORDERED.

This the 5 day of July, 2018.

*Terrence W. Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE